## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

LEONARD ECHOLS,                                :
           Petitioner,                 :
                                       :
       v.                               :       No. 2:18-cv-03574
                                       :
MELISSA HAINSWORTH, SUPERINTENDENT :
SCI SOMERSET,  THE DISTRICT ATTORNEY :
OF THE COUNTY OF PHILADELPHIA, and    :
THE ATTORNEY GENERAL OF THE STATE   :
OF PENNSYLVANIA,                          :
           Respondents.             :

# O P I N I O N

**Report and Recommendation, ECF No. 33—ADOPTED, in part**
**Habeas Corpus Petition, ECF No. 1—DENIED and DISMISSED**

**Joseph F. Leeson, Jr.**                                                      **May 19, 2021**
**United States District Judge**

## I.      INTRODUCTION

In this habeas corpus proceeding, which has been commenced pursuant to 28 U.S.C. §

2254, Petitioner Leonard Echols challenges the constitutionality of his 2007 state court

conviction of second-degree murder, robbery, and criminal conspiracy.  Echols filed his initial

habeas petition *pro se*, however, a counseled brief in support of habeas relief was subsequently

filed on his behalf.  Upon referral from this Court, Magistrate Judge Marilyn Heffley has issued a

Report and Recommendation ("R&R") recommending that Echols's habeas petition be denied.

Counsel has filed objections to Magistrate Judge Heffley's R&R on Echols's behalf.

After a review of Echols's habeas petition and his counseled brief in support, the R&R,

and the counseled objections thereto, and for the reasons set forth below, this Court overrules the

objections, adopts the R&R with one limited modification, and denies and dismisses the habeas

petition without holding an evidentiary hearing or issuing a certificate of appealability.

## II.    RELEVANT BACKGROUND[1]

### A.    Echols's charges, conviction, and state court challenges

The facts underlying Echols's conviction were summarized by the Pennsylvania Superior

Court in its denial of his appeal for relief under Pennsylvania's Post Conviction Relief Act

("PCRA"), which was itself a summary of the Superior Court's denial of Echols's direct appeal.

The Superior Court recounted the following:

> Sometime between 1:00 p.m. and 2:00 p.m. on March 23, 2005, Nicole Thompson
> (hereinafter "Nicole"), Bobby McKenzie (hereinafter "Bobby"), and George
> Paramour (hereinafter "George") were in George's living room located at 5621
> Sprague Street in Philadelphia, Pennsylvania; Bobby was speaking with George
> and Nicole was asleep in an arm chair. George got up to answer a knock at the front
> door and a man, later identified as Irving Perkins (hereinafter "Irving") followed
> him into the living room. Irving got into an argument with George, drew a gun,
> pointed it at George, and ordered him to give up his money. George responded that
> he was "not going to give . . . [Irving] nothing." Irving repeated his demand and
> added that he would shoot George if he didn't comply. Bobby advised George to
> just "give him the money" and Irving repeated the demand for money yet a third
> time.
>
> George refused the demand and immediately thereafter, Bobby rushed Irving, threw
> him against the wall, and knocked the gun from his hand. At that point, [Echols]
> entered the room and grabbed Bobby by the neck from behind as George and Irving
> fought for control of the gun. Bobby flipped [Echols] off of him and ran toward the
> kitchen. Once in the kitchen, Bobby heard two gunshots. Awakened by the
> argument, Nicole saw Irving point a gun at George, [Echols] enter the living room
> from the hallway leading to the front door, and the subsequent fight over the gun.
> She got up and ducked into the adjoining dining room before she heard a gunshot.
> Nicole turned, looked back into the living room, and saw Irving, with the gun in his
> hand, and [Echols] standing over George's body on the living room floor. As
> George lay on the floor she heard [Echols] tell Irving that he should have "just come
> in and . . . shot him [George]." [Echols] and Irving went through George's pockets
> and took money, some loose bags of heroin, and an empty pill bottle that George
> used to store heroin. Thereafter, [Echols] and Irving went to the front door but were

---

[1]    The Court writes for the parties and assumes their familiarity with the procedural and
factual history of this case.

unable to open it. Nicole told them that she would let them out; she went to the door, opened it, and closed it after them. Nicole ran upstairs and told . . . Lisa Thompson (hereinafter "Lisa") that George had been shot. Lisa called 911 and the police arrived shortly thereafter. Nicole was interviewed by the police and identified [Echols] as a participant in the shooting. Nicole testified that she saw [Echols] in George's house a week before the shooting. On that occasion, [Echols] threatened George with a large knife and demanded that he be allowed to buy a bag of heroin on credit. A second man identified as Ray–Ray told [Echols] to calm down and offered to buy him a bag of heroin. Nicole retrieved a bag of heroin and gave it to [Echols] and he left.

The police responded to a report of a shooting at 5621 Sprague Street on March 23, 2005. George was transported to Albert Einstein Medical Center where he was pronounced dead. The medical examiner testified that George died as a result of the gunshot wound to the chest and that the manner of death was homicide. Stippling around the entrance wound indicated that the muzzle of the gun was pressed against George's chest when it was fired. The bullet passed through George's liver and damaged the inferior vena cava and the abdominal aorta blood vessels.

*Commonwealth v. Echols*, No. 2644 EDA 2015, 2017 WL 2130323, at *1-*2 (Pa. Super. Ct.

May 16, 2017).

In its decision on Echols's PCRA appeal, the Superior Court further summarized the facts

presented at trial as relevant to the claims raised in his petition for PCRA relief. In this regard

the Superior Court stated as follows:

On June 8, 2005, [Echols] was arrested and charged with criminal homicide, robbery, criminal conspiracy, and possessing an instrument of crime. [Echols] was subsequently transported to the Homicide Unit of the Philadelphia Police Department for questioning and was not handcuffed at this time. Prior to commencing the interview, Detective George Pirrone verbally administered *Miranda* warnings to [Echols]. N.T. Jury Trial, 8/3/07, at 37–40. Detective Pirrone also testified that during the course of this interview, [Echols] acknowledged that he was at the victim's residence buying drugs the day of the shooting and "took a pill bottle from [the victim] after he was shot." *Id.* at 40–42. On July 25, 2007, [Echols] filed a motion to suppress his statement alleging, *inter alia*, that it was obtained in the absence of a knowing, intelligent, and voluntary waiver of his *Miranda* rights. A hearing was held on the motion on July 31, 2007. Following the hearing, the trial court denied the motion. [Echols] proceeded to a jury trial on August 6, 2007 and was ultimately found guilty of second degree murder, robbery, and criminal conspiracy. As noted, [Echols] was sentenced to an aggregate term of life imprisonment on September 14, 2007. [Echols] did not file any post-trial motions. On September 19, 2007, [Echols] filed a timely notice of

appeal, and the trial court ordered him to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). [Echols] failed to file a concise statement and the trial court issued an opinion on December 14, 2007 finding all of [Echols'] claims waived. *See* Trial Court Opinion, 12/14/07; C.R. at 9.

Thereafter, on March 5, 2008, [Echols] filed a "Petition for Remand for Submission of Statement Pursuant to Pa.App.R. [sic] 1925(b) *Nunc Pro Tunc*." *See* C.R. at 14. On April 15, 2008, this Court remanded the matter to the trial court and directed [Echols] and the trial court to comply with Pa.R.A.P. 1925. On May 13, 2008, [Echols] filed a 1925(b) statement. Thereafter, on June 27, 2008, the trial court filed a supplemental opinion.

On March 31, 2009, this Court affirmed the judgment of sentence. *Id.* On November 30, 2009, the Pennsylvania Supreme Court denied allowance of appeal.

On March 22, 2010, Echols filed a *pro se* PCRA petition. Counsel was appointed and filed an amended petition. Present PCRA counsel entered his appearance on June 5, 2012, and filed an amended petition on February 7, 2013, and a supplemental amended petition on June 25, 2014. On July 17, 2015, the PCRA court, after issuing Rule 907 notice, dismissed Echols' petition without a hearing.

*Id.* at *2-*3 (internal citations and footnotes omitted).

The Superior Court affirmed the denial of Echols's PCRA petition, finding each of his four claims for PCRA relief to be without merit. *See generally id.* As to his first claim for PCRA relief – that direct appellate counsel ineffectively argued that Echols was questioned without a knowing, intelligent, and explicit waiver of his *Miranda* rights – the Superior Court agreed with the trial court and found that, based on a review of the record and case law, "appellate counsel would not have succeeded on appeal with the argument Echols currently proffers." *Id.* at *5. Accordingly, Echols "failed to satisfy his burden of establishing a reasonable probability that the outcome of his direct appeal would have been different." *Id.* In particular, the court revisited its finding made on Echols's direct appeal that the record revealed "Detective Pirrone verbally administered *Miranda* warnings to [Echols], and [Echols] acknowledged that he understood his rights by nodding repeatedly." *Id.* at *4. The court

highlighted the Pennsylvania Supreme Court's decision in *Commonwealth v. Bomar*, 826 A.2d 831 (Pa. 2003), *cert. denied*, 540 U.S. 1115 (2004), in which that Court held that "[a]n explicit statement of waiver after being advised of [one's] *Miranda* rights . . . is not necessary to a finding of waiver under the Fifth Amendment. The pertinent question is whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. Waiver can be clearly inferred from the actions and words of the person interrogated." *Id.* (quoting *Bomar*, 826 A.2d at 843).

As to his second claim for PCRA relief – that trial counsel was ineffective because he failed to impeach Nicole Thompson with her *crimen falsi* conviction for receiving stolen goods, with her use of multiple aliases, and with her probationary status – the Superior Court stated that it "agree[d] with [the trial court's] analysis that concludes that, given the extent of trial counsel's credibility attack of Thompson, Echols failed to show he was prejudiced by trial counsel's cross examination that did not include additional impeachment information." *Id*. at *5. The Superior Court specifically pointed to the trial court's findings that from the prosecutor's direct and cross-examination of Ms. Thompson, the jury was aware that she was a heroin addict, had used heroin prior to the killing, and was "dope sick" when she identified Echols's photograph and spoke to police. *Id*. The jury was also aware that Thompson was still a heroin addict at the time of trial and had even used heroin on the day of trial. The Superior Court explained that, in addition, the jury knew that Ms. Thompson used her daughter's name when speaking to the police in an attempt to prevent the discovery of an outstanding warrant, and that although she had seen Echols a few times after the killing, she did not contact the police because of her fear of the outstanding warrant being discovered. *Id*.

As to Echols's third claim for PCRA relief – that trial counsel was ineffective because he failed to object to the court's jury charge that did not inform the jury that the Commonwealth bore the burden of proving the voluntariness of Echols's statement to Detective Pirrone by a preponderance of the evidence – the Superior Court observed that "Echols cites no legal authority that requires a court to instruct the jury that it must disregard a defendant's statement unless it finds the statement is voluntary by a preponderance of the evidence." *Id*. at *6. The Superior Court rejected this claim accordingly.

As to Echols's final claim for PCRA relief – that trial counsel was ineffective because he did not object to the court's jury charge concerning prior bad acts, in particular, that the charge "attached no burden of proof to [Echols's] prior bad acts—and treated them as givens" – the Superior Court found that the trial court's limiting instruction, which instructed the jury that evidence of Echols's prior bad acts was admissible only for a limited purpose – "tracked the language" of Pennsylvania's standard jury instructions. *Id*. at *7. "Therefore, trial counsel was not ineffective for failing to object to the instruction." *Id*.

## B.    The instant petition for habeas relief

On August 22, 2018, Echols find his *pro se* habeas petition in this Court pursuant to 28 U.S.C. § 2254. *See* ECF No. 1. The petition was referred to Magistrate Judge Heffley for an R&R on August 27, 2018. *See* ECF No. 3. On November 6, 2018, counsel noticed his appearance on behalf of Echols, *see* ECF No. 8, and subsequently filed an unopposed motion for permission to submit a counseled brief in support of Echols's petition for habeas relief, *see* ECF No. 13. Magistrate Judge Heffley granted the motion on December 20, 2018. *See* ECF No. 14. Echols filed his counseled brief in support of his habeas petition on May 23, 2019. *See* ECF No. 19. On October 15, 2019, Respondents filed their opposition to Echols's petition and counseled

brief, *see* ECF No. 23, a counseled reply to which was filed by Echols on January 5, 2020,[2] *see* ECF No. 28.

Echols's *pro se* habeas petition asserts four claims or grounds for habeas relief. Echols claims (1) that "[t]rial counsel was ineffective because he did not impeach the testimony of Nicole Thompson with materials he had readily at hand," *i.e.*, the fact that she had "used 11 aliases, 8 social security numbers, 4 dates of birth; she had two crimen falsi convictions, and two open probations," ECF No. 1 at 8; (2) that "[t]rial counsel was ineffective because he did not object to the courts [sic] charge that allowed the jury to use testimony from Nicole Thompson that appellant quarreled with decedent two days before his death," *id*. at 11; (3) that "[t]rial counsel ineffectively argued [Echols's] claim that [he] was questioned without a knowing, intelligent and explicit waiver of his Miranda rights" and "[t]rial counsel failed to object to the court's charge which did not inform the jury the Commonwealth bore the burden of proving the voluntariness of petitioner's statement to a detective by a preponderance of the evidence," *id*. at 14, and (4) that "[t]rial counsel was ineffective for failing to object to the Commonwealth's intentional and deliberate attempt to mislead the jury by inserting a fictitious person at trial," *id*. at 16.

Echols's counseled brief addresses three of the four claims – one, three,[3] and four – that are asserted in Echols *pro se* petition. *See generally* ECF No. 19.

As to claim one, counsel contends that in not addressing the first element of the ineffective assistance test set forth in *Strickland v. Washington*, 466 U.S. 866 (1984) – namely,

---

[2]     Additionally, on January 5, 2020 Magistrate Judge Heffley denied Echols's motion for discovery. *See* ECF Nos. 30, 32.

[3]     On page 1 of his brief, habeas counsel states that he intends to address claims "one, two and four" for relief as asserted in Echols's *pro se* habeas petition. This statement appears to be in error, as the substance of the brief instead addresses claims one, *three*, and four.

deficiency in trial counsel's performance – and instead denying the ineffective assistance claim based solely on the lack of prejudice to Echols, the state courts unreasonably applied the *Strickland* test. *See id.* at 30. Counsel argues that Thompson opened the door to impeachment by way of discussing her prior bad acts. *See id*. at 27-28. That trial counsel only impeached Thompson with her drug use, failing entirely to impeach her with her untruthfulness (through use of aliases and her *crimen falsi* conviction) or with potential bias towards the prosecution (due to her probation status), was, according to counsel, objectively unreasonable and therefore deficient under *Strickland*. *See id.* at 30-32. Counsel moreover argues that the state courts' determination that there was enough information before the jury to impeach Ms. Thompson even with trial counsel's failure, and there was therefore no prejudice to Echols, "was wrong on the facts in the record." *Id*. at 32.

As to claim three,[4] counsel contends that the testimony adduced at the suppression hearing indicates that there was not a valid waiver of Echols's *Miranda* rights, and the state court findings to the contrary constituted an unreasonable application of and were contrary to established Supreme Court precedent. *See id*. at 33-35. Counsel moreover argues that the detective's statements to Echols were designed to elicit a response. *See id*. at 35-36. Finally, counsel contends that the trial court failed to instruct the jury on the applicable burden of proof, and counsel ineffectively failed to object. *See id*. at 37. According to counsel, the third part of this multi-part claim was not addressed by the Superior Court on review of Echols's PCRA appeal, and this claim is entitled to *de novo* review by this Court as a result. *See id*. at 38.

---

[4]     As explained further below, counsel in his objections to the R&R states that "[p]etitioner presented a three-part claim related to the taking of his statement by police." ECF No. 38 at 11.

As to claim four, Echols's counsel argues that trial counsel "acquiesced" to the Commonwealth's knowing presentation of false evidence in violation of Echols's due process rights; accordingly, counsel argues trial counsel's failure to object constituted ineffective assistance. *See id*. at 38-43. Counsel states it was improper for the Commonwealth to argue to the jury that Irving Perkins was the shooter (and Echols the accomplice), because the Commonwealth "knew" Perkins was not the shooter, as evidenced by its dismissal of charges against him nine months prior based on a DNA exclusion. *See id*. at 39-40. On this point, counsel avers as follows:

> The Commonwealth cannot reconcile its dismissal of the case against Perkins with its posture at Petitioner's trial that Perkins was the shooter. The very same evidence that was presented at Petitioner's trial had been determined to be inadequate to proceed to trial against Perkins. While it is possible that there exists some explanation that could reconcile these polar opposite positions, none is apparent on the record.

*Id*. at 39. Counsel argues that trial counsel's failure to object to this purported due process violation constituted ineffective assistance. *See id*. at 40-41. Counsel further acknowledges that "this claim was never presented to the state courts at trial, on direct appeal, or in initial PCRA proceedings," and as such is unexhausted and procedurally defaulted. *Id*. at 41. However, according to counsel, this Court can reach the merits of the ineffective assistance claim through *Martinez v. Ryan*, 566 U.S. 1 (2012), as the claim for habeas relief is "substantial." *See id*. at 41-43.

### C.     The Report and Recommendation

Magistrate Judge Heffley issued her R&R on March 31, 2020, concluding that Echols is not entitled to habeas relief. *See generally* R&R, ECF No. 33.

As to Echols's first claim for habeas relief – that trial counsel was ineffective in failing to impeach Nicole Thompson as to her *crimen falsi* convictions, her use of aliases and other false

identifying information, and her probation status – Magistrate Judge Heffley found this claim to be without merit. After explaining the highly deferential posture a federal court must take towards a state court's determination that an ineffective assistance claim fails, Magistrate Judge Heffley states that "[t]he Pennsylvania courts found that Thompson had been impeached to a sufficient degree [and] that further impeachment . . . would not have been reasonably likely to change the outcome of Echols' trial. That determination is not objectively unreasonable." R&R at 7 (internal citation omitted). She further observes that, while Echols claims that Thompson was the "sole identification witness" who provided testimony linking him to the crimes, "[h]e conveniently overlooks the damning evidence that he himself provided when he told the police that he had been at the victim's residence at the time of the murder buying drugs and that he had taken a 'pill bottle' from the victim after he was shot," thereby corroborating Thompson's testimony. *Id*. at 7-8.

Turning to Echols's third claim – that an admission he made to police was admitted at trial despite no showing of a knowing, intelligent, and voluntary waiver of his *Miranda* rights, and that trial counsel was ineffective in failing to object to the trial court's failure to instruct the jury as to the Commonwealth's burden of proof relative to waiver – Magistrate Judge Heffley observes that the trial court found that Echols knowingly and voluntarily waived his *Miranda* rights. *See id*. at 9-10. The R&R concludes that "[h]ere, there is nothing to suggest that Echols did not understand the Miranda warning or that his statement was not made knowingly and voluntarily," and therefore, "the argument that Echols faults his counsel for not making was meritless, and counsel cannot be ineffective in failing to raise a meritless argument." *Id*. at 10.

As to Echols's fourth claim for relief – that trial counsel was ineffective in failing to object to a due process violation (the Commonwealth's presentation of purportedly false

evidence) – Magistrate Judge Heffley explains that "[t]he fact that the Commonwealth dismissed the charges against Perkins does not establish that he was not a participant in the crimes, much less that the prosecution knew Perkins was not involved in the crimes and made false statements to the jury about it." *Id*. at 11. She concludes as follows: "Unsurprisingly, Echols has failed to identify any authority for the notion that, when the prosecution decides not to press charges against one participant in a crime, it may not present evidence or argument in another defendant's trial that the person against whom it dismissed the charges was involved in the crime. Consequently, Echols' claim is devoid of any merit." *Id*.

### D.     Echols's objections

Counsel, on behalf of Echols, has filed objections to Magistrate Judge Heffley's R&R. *See generally* ECF No. 38. Counsel objects to the R&R's findings as to each of the three habeas claims asserted in counsel's brief.

Counsel first takes issue with the fact that the R&R does not address the "performance" element of the *Strickland* test for ineffective assistance, and moreover objects to the R&R's application of and findings in regard to the "prejudice" element of the *Strickland* test. According to counsel, "[t]he state court decisions, holding that Thompson had already been adequately impeached in other areas, was an unreasonable application of Strickland and its progeny and were also based on unreasonable fact finding." *Id*. at 6. Although conceding that the R&R "correctly applied ADEPA [sic] deference to the prejudice question," counsel contends that Magistrate Judge Heffley "began her analysis of the prejudice question with a significant overstatement of the law. She said that a federal court **must defer** to the state court's decision pursuant to 28 U.S.C. § 2254(d)(1)." *Id*. at 6-7 (emphasis in original). Counsel avers that while deference under habeas review is "robust," such deference "does not imply abandonment or

abdication of [federal] judicial review." *Id*. at 7. Under the correct standard, counsel argues that the state court decisions finding no prejudice as a result of any deficient performance were objectively unreasonable, because trial counsel only impeached Nicole Thompson as to her drug use and failed to impeach her as to her honesty and her motivations. *See id*. at 9. Relatedly, counsel argues, or rather, assumes, that this failure by trial counsel was itself objectively unreasonable thereby constituting a sufficiently deficient performance so as to have infringed Echols's Sixth Amendment right to effective counsel. *See id*. Finally, counsel takes issue with Magistrate Judge Heffley's characterization of Echols's self-incriminating statement to police – counsel argues that Echols's statement "says nothing that would support a conclusion that he was in on the robbery." *Id*. Therefore, "it forms no basis for concluding that the failure to do the available cross did not cause prejudice." *Id*.

With respect to the R&R's findings as to Echols's third habeas claim, counsel asserts that Magistrate Judge Heffley did not address the second and third parts of what he identifies as "a three-part claim" – that "there was not an adequate showing that Petitioner understood and waived his right to remain silent"; that the police continued to speak to him about evidence they allegedly had against him "without an adequate showing that he understood and waived his right to remain silent"; and that "trial counsel was ineffective when he failed to object to the trial court's failure to instruct on the burden of proof related to voluntariness." *Id*. at 11. While counsel contests many aspects of the R&R's analysis and the ways in which it characterizes Echols's arguments for habeas relief, the heart of his objections as to habeas claim three is counsel's assertion that Magistrate Judge Heffley applied incorrect law in determining that Echols had waived his *Miranda* rights. *See id*. at 13-14. Counsel argues that contrary to the R&R's findings, a waiver cannot be found without a spoken acknowledgment of understanding,

and a spoken statement is not sufficient to find a waiver where it can be shown that the accused did not understand the rights he was waiving. *See id*. at 13. Finally, counsel argues that the R&R's conclusion that there is "nothing to suggest that Echols did not understand his *Miranda* warnings or that his statement was not made knowingly and voluntarily" is "wrong for two reasons" – "[f]irst, it is the prosecution's burden to show understanding and waiver"; [s]econd, the Magistrate's comment did not address 'waiver' – understanding of his rights is only one of two components." *Id*. at 13-14.

With respect to the R&R's findings as to Echols's fourth habeas claim, counsel relies on the same arguments raised in his primary brief, and states his disagreement with Magistrate Judge Heffley's conclusion that this claim is "meritless." *See id*. at 15. Regarding the dispositive issue relative to this claim as identified in the R&R – that charges may be *nolle prossed* for reasons other than innocence and that Echols failed to proffer any evidence that showed that the charges were dismissed because of Perkins's innocence – counsel argues that he should be granted discovery into the matter, which was previously requested and denied, rather than having this habeas claim denied outright. *See id*. at 15-18.

## III.    LEGAL STANDARDS AND APPLICABLE LAW

### A.    Contested reports and recommendations – general principles

When timely objections to a magistrate judge's report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a *de novo* review of those portions of the report to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); *Weidman v. Colvin*, 164 F. Supp. 3d 650, 653 (M.D. Pa. 2015); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). However, a district court "[is] not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. §

636(b)." *Hill v. Barnacle*, 655 F. App'x 142, 147 (3d Cir. 2016) (citing *Elmendorf Grafica, Inc. v. D.S. America (East), Inc.*, 48 F.3d 46, 49-50 (1st Cir. 1995)); *see Weidman*, 164 F. Supp. 3d at 653 ("Although the standard is de novo, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper." (citing *Rieder v. Apfel*, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000))). Where objections are general rather than specific, or untimely, *de novo* review is not required. *See Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); *see also Snyder v. Bender*, 548 F. App'x 767, 771 (3d Cir. 2013). Uncontested portions of a report and recommendation, as well portions to which untimely or general objections are made, may be reviewed under a standard determined by the district court; however, at the very least, these portions should be reviewed for "clear error or manifest injustice." *Colon-Montanez v. Delbalso*, No. 3:15-CV-02442, 2016 WL 3654504, at *1 (M.D. Pa. July 8, 2016); *Equal Employment Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) ("[A] district court should 'afford some level of review to dispositive legal issues raised by the report[.]' We have described this level of review as 'reasoned consideration.'" (quoting *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987))). As a general matter, a district court "may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in a report. 28 U.S.C. § 636(b)(1)(C).

### B.      Habeas corpus petitions under 28 U.S.C. § 2254 – general principles

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). Under 28 U.S.C. § 2254, which governs petitions for a writ of habeas corpus on behalf of state court prisoners, habeas relief is available to a petitioner only where a state court's determination of the merits of his claims resulted in a decision that was (1) "contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." [5] 28 U.S.C. § 2254(d)(1)-(2). Where "the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Where the challenge is directed at a state court's factual determination, that determination "shall be presumed to be correct" by a federal court; the habeas petitioner "shall have the burden of rebutting [this] presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Fahy v. Horn*, 516 F.3d 169, 181 (3d Cir. 2008) ("[A] federal habeas court must afford a state court's factual findings a presumption of correctness and that [ ] presumption applies to the factual determinations of state trial and appellate courts.");[6] *Hunterson v. Disabato*, 308 F.3d 236, 245 (3d Cir. 2002) ("[I]f permissible inferences could be drawn either way, the state court decision must stand, as its determination of the facts would not be unreasonable.").

In the end, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (quoting *Harrington*, 562 U.S. at 101); *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (explaining that § 2254 "imposes a

---

[5] Section 2254 was modified by the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"), one purpose of which was "to reduce delays in the execution of state and federal criminal sentences." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). In particular, Congress adopted an amended 28 U.S.C. § 2254(d), governing petitions for writs of habeas corpus where a petitioner's claims were previously "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); *Woodford*, 538 U.S. at 206.

[6] "[T]he § 2254(e)(1) presumption of [factual] correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d)." *Nara v. Frank*, 488 F.3d 187, 200-01 (3d Cir. 2007).

highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt").

### C.     Ineffective assistance of counsel – general principles

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the standard applicable to claims of ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687.

To establish the first element – deficiency – a defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (citing *Strickland*, 466 U.S. at 687). "For the deficient performance prong, '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). The deficiency inquiry is "deferential":

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

*Id.* (quoting *Strickland*, 466 U.S. at 689).

To establish the second element – prejudice – the defendant must show that "there is a reasonable probability that, but for counsel's error, the result would have been different." *Id.* (citing *Strickland*, 466 U.S. at 687). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694 and *Harrington*, 562 U.S. at 112).

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689 and *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). This is because the question before a federal court entertaining a § 2254(d) petition that raises a claim of ineffective assistance is not whether the state court's ruling on that issue was correct – that is, whether counsel was actually ineffective under *Strickland* – but only whether the state court's determination of that issue was objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 694 (2002) ("The focus of the [ ] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in [*Williams v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.").

## IV.    DISCUSSION

As an initial matter, the Court finds that Echols's counseled objections are, on the whole, timely and sufficiently particular to warrant a *de novo* review of those portions of the R&R to which the objections are directed. *See* 28 U.S.C. § 636(b)(1)(C); *Weidman*, 164 F. Supp. 3d at 653. The Court will address counsel's objections and the R&R's findings in the context of each of the three claims asserted by Echols's counseled brief in support of habeas relief.[7]

### A.    Habeas claim one:  ineffective assistance of trial counsel for failure to sufficiently impeach Nicole Thompson

As outlined previously, Echols's first claim for habeas relief asserts that he was denied effective assistance of counsel when trial counsel failed to impeach the testimony of eyewitness Nicole Thompson with anything other than her drug use. Accordingly, Echols claims that the

---

[7]    Since counsel did not address Echols's second habeas claim, *see* ECF No. 19 a 1 ("This counseled brief addresses three of the four [claims] . . . ."), the Court deems this claim waived and does not address it here.

state court determinations to the contrary – specifically, that this ineffectiveness claim fails because, "given the extent of trial counsel's credibility attack of Thompson, Echols failed to show he was prejudiced by trial counsel's cross examination that did not include additional impeachment information," *Commonwealth v. Echols*, No., 2017 WL 2130323, at *5 (Pa. Super. Ct. May 16, 2017) – constituted "an unreasonable application of *Strickland* and its progeny and were also based on unreasonable fact finding," ECF No. 38 at 6. This Court disagrees.

As an initial matter, the PCRA and Superior Courts applied the proper legal standard for claims of ineffective assistance of counsel. *See Echols*, 2017 WL 2130323, at *3. Under this standard, the Superior Court explained that to succeed on an ineffective assistance claim, a PCRA petitioner must show, in addition to counsel's objectively deficient performance, that he "suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Echols*, 2017 WL 2130323, at *4 (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). The PCRA and Superior Courts' determination that Echols did not suffer "prejudice" as a result of trial counsel's performance was not objectively unreasonable, nor was it based on an unreasonable factual determination.

In reciting the trial court's decision on this PCRA claim, the Superior Court stated as follows:

> From the prosecutor's direct examination and the cross examination, the jury was aware that the witness was a heroin addict, had used heroin prior to the killing and had fallen into a deep sleep as a result. Indeed, she was asleep when the robbery began. The jury also was aware that she used her daughter's name, Tarin Thompson[,] in an attempt to prevent the police from discovering an outstanding arrest warrant. The jury also was aware that although she had seen [Echols] a few times after the killing, she did not contact the police because of the outstanding warrant.

> From the cross examination, the jury also knew that even at the time of trial the witness was still a heroin addict; that she used drugs on the day of trial; that she intended to use drugs after she left the witness stand; that she used drugs the night before she gave a statement to police; that she was undergoing withdrawal symptoms ("nodding off" and feeling "dope sick") when she identified [Echols'] photograph and spoke to police; and that she previously had been in jail. Accordingly, even if this additional impeachment evidence was introduced, the outcome of the trial would not have changed.

*Id*. at *5. These are state court factual determinations, in particular, what testimony was heard by the jury, and as such they are presumed to be correct.[8] *See* 28 U.S.C. § 2254(e)(1). Counsel has made no showing that these determinations are incorrect, let alone by clear and convincing evidence.[9] *See id*.

The fact that, in addition to Thompson's extensive and continued drug use, the jury was aware (i) that Thompson had used her daughter's name as an alias to avoid discovery of an outstanding warrant, (ii) that although she had seen Echols a few times after the killing, she did not contact police because of the outstanding warrant, and (iii) that she had previously been in jail, proves fatal to Echols's habeas claim. Because the jury was aware, to some degree, of Thompson's penchant for untruthfulness (by way of her use of an alias), that she had some criminal history (by way of her belief that she had an open warrant), as well as that she used heroin extensively, this Court cannot conclude that the state courts unreasonably applied *Strickland* in determining that Echols failed to demonstrate prejudice.

Habeas counsel hangs his argument on the fact that "the witness was not cross-examined at all with respect to her dishonesty." ECF No. 38 at 9. However, the underlying issue of

---

[8] Moreover, they are clearly supported by the record. *See*, *e.g.*, Notes of Testimony ("N.T."), 8/1/2007 at 237-55, 273, 277.
[9] Counsel even points out that Thompson gave a false name to police initially for fear of an outstanding warrant in his brief in support of habeas relief in arguing that Thompson opened the door to impeachment. *See* ECF No. 19 at 27-28.

Thompson's credibility *was* presented to the jury; that some of this information was conveyed to the jury by way of the Commonwealth's examination of Thompson rather than her cross-examination by Echols's trial counsel is of no significance for purposes of the prejudice analysis.[10]

In the end, it was not, in the Court's view, objectively unreasonable for the state courts to find that Echols failed to show that had trial counsel questioned Thompson as to her use of other aliases, her *crimen falsi* conviction, and her probationary status, there would have been a

---

[10]    As a general matter, after a review of the underlying state court record, the Court agrees with the characterization of trial counsel's cross-examination of Thompson as set forth by Respondents in their brief in opposition to the habeas petition:

> [T]he record reflects that defense counsel conducted a lengthy and aggressive cross-examination of Nicole Thompson on numerous points. Counsel got Ms. Thompson to admit that she was a longtime heroin user who was still an active addict and not using methadone (N.T. 8/1/07, 248); that she was "most definitely" going to use heroin after leaving court that day (Id., 250); that "as much money as you have and as much access as you have to drugs, you'll use that much" (Id.); that George Paramour had given her heroin to use on the day of the shooting, and that she had taken those drugs and fallen into a heavy sleep from which she awakened only as a result of the altercation (Id., 252-253); that she had prior brushes with the law, gave police a false name even when she went to Homicide to cooperate, and believed that she had an active bench warrant on which she was trying to avoid arrest, although she later discovered that this was merely a "scofflaw" (Id., 253-254); that she had difficulty recalling what she told police (Id., 264-265); that she was so fatigued, emotionally distraught, and "dope sick" from drug withdrawal that the police had to repeatedly nudge her to "stay awake and aware" while she was being shown photographs to make an identification (Id., 270-272); that she continued to use drugs regularly throughout the period between when she gave her two police statements in March and May of 2005 (Id., 277); and that she only gave her second statement because Bobby McKenzie asked her "to take him to go cop [drugs]" and used this excuse to get Ms. Thompson to a location where a police detective could approach her by surprise (Id., 278). Counsel also cross-examined Ms. Thompson on various factual discrepancies in her descriptions, such as whether the men involved had facial hair, how tall they were, what she had heard them say during the shooting, and inconsistencies between her court testimony and her police statements.

ECF No. 23 at 14-15.

"substantial, not just conceivable" likelihood of a different result at trial in light of the other

evidence presented to the jury regarding Thompson's credibility. *Harrington v. Richter*, 562

U.S. 86, 111 (2011). *See Commonwealth v. Small*, 980 A.2d 549, 565-66 (2009) (finding that

where counsel already impeached a witness regarding motive and bias, failure to introduce the

witness's *crimen falsi* conviction was not prejudicial); *Commonwealth v. Dennis*, 715 A.2d 404,

408-09 (1998) (finding that counsel was not ineffective for failing to impeach **a** witness in one

particular way, where counsel impeached the witness in other ways).

Nor was it contrary to, or based on an unreasonable application of, *Strickland*, for the

state courts to decline to address the performance element of an ineffective assistance claim, and

to dispose of Echols's claim for failure to satisfy the prejudice element alone. To the contrary,

this approach has been expressly endorsed by the Supreme Court. *See Strickland*, 466 U.S. at

697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both

components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which

we expect will often be so, that course should be followed.").

For the above reasons, Echols has failed to show that he is entitled to habeas relief with

respect to his first claim. Magistrate Judge Heffley's R&R is adopted as to this claim, and

Echols's objections are overruled.

> **B.** **Habeas claim three: alleged constitutional violations regarding Echols's**
> ***Miranda* waiver and statement to the police**

Habeas counsel states that he has "presented a three-part [habeas] claim related to the

taking of [Echols's] statement by the police. First, there was not an adequate showing that

Petitioner understood and waived his right to remain silent. Second, without an adequate

showing that he understood and waived his right to remain silent, the police continued to speak

with [Echols] about the evidence that they allegedly had against him. . . . Third, trial counsel was ineffective when he failed to object to the trial court's failure to instruct on the burden of proof related to voluntariness."[11] ECF No. 38 at 11.

According to counsel, Magistrate Judge Heffley failed to address the second and third parts of this claim. *See id.* This, however, is at least partly incorrect. This Court construes the R&R as finding (1) that because "there is nothing to suggest that Echols did not understand the Miranda warning or that his statement was not made knowingly and voluntarily," the trial court's determination that Echols knowingly and voluntarily waived his *Miranda* rights was not in error, R&R at 10, and (2) that because the trial court reasonably determined that Echols knowingly and voluntarily waived his *Miranda* rights, "the argument that Echols faults his counsel for not making was meritless, and counsel cannot be ineffective in failing to raise a meritless argument," *id*.

Habeas counsel also argues that the third part of this claim – that trial counsel was ineffective for failing to object to the trial court's failure to include an instruction as to burden of proof related to voluntariness – was presented to but not addressed by the Superior Court in its decision on Echols's PCRA appeal. *See* ECF No. 19 at 42. This is also incorrect. *See Commonwealth v. Echols*, 2017 WL 2130323, at *6 (Pa. Super. Ct. May 16, 2017) ("Echols next contends trial counsel was ineffective because he failed to object to the court's charge that did not inform the jury that the Commonwealth bore the burden of proving the voluntariness of Echols' statement to Detective Pirrone by a preponderance of the evidence."). According to that

---

[11] The Court does not independently address the second part of this claim – that the police continued to speak to Echols without an adequate showing of waiver of his *Miranda* rights – because, as discussed below, the Court finds the state courts did not unreasonably determine that Echols had knowingly and voluntarily waived his right to remain silent.

court, "Echols cite[d] no legal authority that requires a court to instruct the jury that it must disregard a defendant's statement unless it finds the statement is voluntary by a preponderance of the evidence," and the trial court charged the jury as to the voluntariness of Echols's statement to the police using Pennsylvania's Standard Suggested Jury Instructions. *Id.* Therefore, according to the Superior Court, Echols's claim was without merit. *Id.*

In any event, this Court now finds that counsel's arguments in support of Echols's multi-part habeas claim are without merit. The state courts did not unreasonably apply controlling federal law or make any erroneous factual determinations as to the voluntariness of Echols's statement to police, or as to trial counsel's failure to object to the relevant jury instructions.

With respect to Echols's claim that there was an insufficient showing that his waiver of the right to remain silent was knowing, intelligent, and voluntary, the Superior Court in its decision on Echols's direct appeal of his conviction stated as follows:

> Upon review, we agree with the trial court that '[Appellant] was given *Miranda* warnings, he understood the warnings . . . [and] voluntarily waived his rights' prior to making an oral statement to the police. Trial Court Supplemental Opinion, 6/27/08, at 6; C.R. at 17. The record reflects that on June 8, 2005, at approximately 9:30 p.m., Appellant was transported to the Homicide Unit of the Philadelphia Police Department and placed inside interview room D without handcuffs. N.T. Jury Trial, 8/3/07, at 34-37. Shortly thereafter, Detective Pirrone and his partner, Detective Richard Harris, entered the room and interviewed Appellant. Detective Pirrone testified that, prior to questioning Appellant, he identified himself and Detective Harris, informed Appellant that he was under arrest for the robbery and murder of the victim, and showed him a copy of the arrest warrant. *Id.* at 37-39. The record further reveals that Detective Pirrone verbally administered *Miranda* warnings to Appellant, and Appellant acknowledged that he understood his rights by nodding repeatedly. *Id.* at 41-42. At this point, Appellant voluntarily admitted that he went to the victim's house on the evening in question to purchase narcotics and had taken a pill bottle from the victim's body. Appellant, however, denied any involvement in the shooting and the interview was terminated after Appellant indicated that he did not want to give a written statement. Additionally, Detective Pirrone testified that Appellant was not given *Miranda* warnings to sign because he stated that he did not want to give a written statement. *See also* N.T. Suppression Hearing, 7/31/07, at 11-21.

Moreover, we find the record reflects no evidence of police coercion. The record reveals that during this interview, both Detective Pirrone and Detective Harris were unarmed, and neither detective raised his voice or threatened Appellant in any way. N.T. Jury Trial, 8/3/07, at 38. Detective Pirrone also testified that Appellant did not appear to be under the influence of drugs or alcohol, spoke clearly and was responsive, and was 'acting very nonchalant [and] didn't seem to worry much.' *Id.* at 42-43; *see also* N.T. Suppression Hearing, 7/31/07, at 21-27. Accordingly, based upon the totality of the circumstances we conclude Appellant's inculpatory statement was lawfully obtained, and the trial court properly denied his motion to suppress.

*Commonwealth v. Echols*, CP-51-CR-0907531-2005, 2337 EDA 2007 (Pa. Super. Ct. March 31, 2009) at 10-11.

Neither Echols's counseled brief in support of his habeas petition, nor his counseled objections to Magistrate Judge Heffley's R&R, explains what about these findings and conclusions is problematic – or, in the language of the habeas statute, how they constitute or rely upon either an unreasonable application of clearly established federal law or erroneous factual determinations. To the contrary, it was not objectively unreasonable for the state courts to conclude that after being read his *Miranda* warning, and in the absence of any identifiable threats or other forms of coercion, Echols knowingly, intelligently, and voluntarily waived his right to remain silent by nodding his head repeatedly and then stating that he went to the victim's house the night of the killing. *See Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010) ("[*Miranda*] does not impose a formalistic waiver procedure that a suspect must follow to relinquish [his or her] rights. As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford."); *see also United States v. Tian Xue*, No. CR 16-22-4, 2018 WL 3328165, at *4 (E.D. Pa. July 6, 2018) (finding defendant's "waiver of her *Miranda* rights was voluntary, since it was based on her free and deliberate choice rather than on any intimidation, coercion, or deception on the part of [law enforcement]");

*Wilcox v. Warren*, No. CV 13-3524, 2015 WL 8780331, at *8 (D.N.J. Dec. 15, 2015) ("In this

case, where the evidence in the record does not show that Wilcox unambiguously invoked his

right to remain silent, the Appellate Division's determination that his post-*Miranda* statements

were admissible is not contrary to, or an unreasonable application of, *Miranda* or other Supreme

Court holdings."), *aff'd sub nom. Wilcox v. Warden New Jersey State Prison*, 720 F. App'x 669

(3d Cir. 2018). Nor is it apparent to this Court, after a review of the underlying record, that the

facts as found by the trial and Superior Courts were inaccurate, let alone erroneous.

With respect to Echols's claim that his trial counsel was ineffective for failing to object to

the trial court's failure to instruct the jury as to the burden of proof on the issue of waiver, the

Superior Court stated as follows in its decision on Echols's PCRA appeal:

> Echols next contends trial counsel was ineffective because he failed to object to the
> court's charge that did not inform the jury that the Commonwealth bore the burden
> of proving the voluntariness of Echols' statement to Detective Pirrone by a
> preponderance of the evidence. This very same argument was previously rejected
> by this Court in *Commonwealth v. Ort,* 581 A.2d 230 (Pa. Super. 1990), as follows:
>
>> [The trial court's] instruction comports with the proposed
>> Pennsylvania Standard Jury Instructions, sections 3.04B and 3.05.
>> Appellant has cited no authority to support his position that the jury
>> must be specifically instructed that the Commonwealth has the
>> burden of proving the voluntariness of the confession by the
>> preponderance of the evidence. In addition to the instructions quoted
>> above relating specifically to the voluntariness of the confession, the
>> jury in the present case was instructed that the Commonwealth had
>> to prove that the crime had been committed by proof beyond a
>> reasonable doubt. Had the jury mistakenly applied this standard to
>> the determination of voluntariness, the error would have redounded
>> to appellant's benefit. We find that the jury was amply instructed on
>> the voluntariness of the confession, and there was no error in the
>> instructions given to them. Consequently, counsel was not
>> ineffective for failing to object to the instruction.

*Id.* at 234–235.

As in *Ort*, Echols cites no legal authority that requires a court to instruct the jury

that it must disregard a defendant's statement unless it finds the statement is

voluntary by a preponderance of the evidence. In this case, the trial court charged the jury regarding the voluntariness of Echols' oral statement to police pursuant to Pennsylvania Suggested Standard Jury Instructions (Pa. S.S.J.I.) (Crim) 3.01, 3.04C and 3.04D. *See* N.T., 8/6/2007, at 144–147. The trial court also instructed the jury that the Commonwealth had the burden of proving that Echols was guilty beyond a reasonable doubt. *See* N.T., 8/6/2007, at 128–130. Applying *Ort*, no relief is due on this claim of trial counsel ineffectiveness.

*Echols*, 2017 WL 2130323, at *6 (footnote omitted).

Echols's habeas counsel fails to identify how the Superior Court's analysis here entitles Echols to habeas relief. A review of the instructions read to the jury relative to Echols's statement to police – specifically, that the jury must determine that the statement was made voluntarily, and explaining to the jury what things to consider in making such a determination, prior to being able to consider the statement as evidence of Echols's guilt, *see* N.T., 8/6/2007 at 145-47 – reveals that the jury was properly charged on this issue in a manner consistent with Pennsylvania's standard jury instructions. Additionally, "[Echols] has cited no authority to support his position that the jury must be specifically instructed that the Commonwealth has the burden of proving the voluntariness of the confession by the preponderance of the evidence." *Com. v. Ort*, 581 A.2d 230, 234-35 (1990). In the absence of any such authority, it was not objectively unreasonable as a matter of professional performance for trial counsel to not object to the absence of a specific instruction as to the standard of proof of voluntariness/waiver. *See Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010). Because there was no error in the jury instructions, and therefore no deficiency in trial counsel's having failed to object to them, the Superior Court's ultimate determination that Echols's ineffective assistance claim on this ground was without merit was not contrary to or an application of clearly established federal law, nor did it involve or rely upon an erroneous factual determination.

For the above reasons, Echols has failed to show that he is entitled to habeas relief with respect to his third claim. Magistrate Judge Heffley's R&R is adopted as to this claim, and Echols's objections are overruled.

**C.      Habeas claim four:  ineffective assistance of trial counsel for counsel's failure to object to alleged due process violations resulting from the Commonwealth's presentation of "false" evidence**

In Echols's fourth claim for habeas relief, counsel contends that Echols's trial counsel was ineffective in failing to object to the Commonwealth's knowing presentation of "false" evidence – *i.e.*, evidence that Perkins was the shooter. According to counsel, that charges against Perkins had been dismissed implies Perkins's innocence, and it was in violation of Echols's due process rights for the Commonwealth to present evidence that Perkins was the shooter when it knew this was not in fact the case. *See* ECF No. 38 at 14-18. Additionally, while he concedes that this argument was not presented to the state courts on a direct or collateral challenge, habeas counsel states that "this Court can reach the merits of the ineffectiveness claim, and the underlying due process violation through *Martinez v. Ryan*, 566 U.S. 1 (2012)." ECF No. 19 at 41.

While Magistrate Judge Heffley reached the merits of Echols's habeas claim of ineffective assistance of trial counsel for failure to object to the presentation of allegedly "false" evidence, this Court respectfully concludes that Echols has not satisfied the threshold requirement of showing "cause" to excuse the procedural default of this claim under the narrow equitable remedy set forth in *Martinez v. Ryan*, 566 U.S. 1 (2012).

Because of the deference owed to state courts under § 2254, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before seeking federal

habeas review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); 28 U.S.C. § 2254(b)(1)

(explaining that a petition for a writ of habeas corpus "shall not be granted unless it appears

that—(A) the applicant has exhausted the remedies available in the courts of the State").[12]

Similar to the requirement of "exhaustion," where a state court has denied a petitioner's claim for

collateral relief based on an adequate and independent state procedural rule, the claim is

considered "procedurally defaulted," and may not be reviewed by a federal court. *Davila v.*

*Davis*, 137 S. Ct. 2058, 2064 (2017) ("[A] federal court may not review federal claims that were

procedurally defaulted in state court—that is, claims that the state court denied based on an

adequate and independent state procedural rule. This is an important 'corollary' to the exhaustion

requirement." (citations omitted));[13] *see Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)

(explaining that "[j]ust as in those cases in which a state prisoner fails to exhaust state remedies,

a habeas petitioner who has failed to meet the State's procedural requirements for presenting his

federal claims has deprived the state courts of an opportunity to address those claims in the first

instance").

 While a failure to exhaust usually requires a district court to dismiss a habeas petition

without prejudice so that a petitioner can return to state court to exhaust his claims, where state

law forecloses review of unexhausted claims – as happens when the PCRA statute of limitations

has run – the claims are considered procedurally defaulted. *See Lines v. Larkins*, 208 F.3d 153,

160 (3d Cir. 2000). However, "[a] state prisoner may overcome the prohibition on reviewing

---

[12] A petitioner can overcome the requirement of exhaustion if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B).

[13] "The procedural default doctrine [ ] advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Id.* at 2064 (citing *McCleskey v. Zant,* 499 U.S. 467, 493 (1991)).

procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the

state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'"

*Davila*, 137 S. Ct. at 2064-65 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  To

establish "cause," a petitioner must "show that some objective factor external to the defense

impeded counsel's efforts to comply with the State's procedural rule."  *Id.* at 2065 (quoting

*Murray v. Carrier,* 477 U.S. 478, 488 (1986)).  A factor is "external" only if it cannot be

attributed to the petitioner.  *Coleman*, 501 U.S. at 753.

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court held that

"[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.' That

is so . . . because the attorney is the prisoner's agent, and under 'well-settled principles of agency

law,' the principal bears the risk of negligent conduct on the part of his agent."  *Maples v.*

*Thomas*, 565 U.S. 266, 280-81 (2012) (quoting *Coleman*, 501 U.S. at 753-54).  In *Martinez v.*

*Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized the following narrow exception to this

rule:  "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in

an initial-review collateral proceeding, a procedural default will not bar a federal habeas court

from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral

proceeding, there was no counsel or counsel in that proceeding was ineffective."  *Id*. at 17.

Stated differently, the rule set forth in *Martinez* is as follows:  "counsel's failure to raise an

ineffective assistance [of trial counsel] claim on collateral review may excuse a procedural

default if: '(1) collateral attack counsel's failure itself constituted ineffective assistance of

counsel under *Strickland*, and (2) the underlying ineffective assistance claim is "a substantial

one."'"  *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 237-38 (3d Cir. 2017) (quoting *Glenn*

*v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014)). An underlying claim is "substantial" where it "has some merit." *Glenn*, 743 F.3d at 410.

Here, habeas counsel has failed to show that the underlying ineffective assistance of trial counsel claim is "substantial," in that it "has some merit." Because this claim is not substantial, it was further not ineffective assistance of counsel to decline to raise this claim on initial collateral review. *See Bey*, 856 F.3d at 238 (explaining that the petitioner's "claim that his PCRA counsel's assistance was ineffective stems from the strength of his underlying ineffective assistance of trial counsel claim"). The Court agrees with Respondents that

> [h]ere . . . *no false evidence was presented*. Petitioner asserts that "the evidence presented about Perkins was false" (Supporting Memorandum, 39), but does not identify any specific evidence that he believes to have been inaccurate. His claim is, instead, that because the Commonwealth dropped charges against Irving Perkins, that should somehow preclude the prosecution from arguing that the evidence adduced at trial supported a reasonable inference that Perkins was the shooter.
>
> Not only does petitioner conflate evidence with argument – which, in and of itself, is fatal to his claim; a due process violation based on allegedly "false evidence" cannot stand on the prosecutor's arguments from that evidence – but his claim is, fundamentally, an attempt to apply the doctrine of collateral estoppel to a criminal case where it does not fit. Petitioner offers no authority in support of his claim.

ECF No. 23 at 26 (emphasis in original). The Court agrees that it was the Commonwealth's *argument* at trial regarding its theory of the case, rather than the existence of any evidence, that Echols truly takes issue with. To the extent "evidence" is relevant to this claim, it was the Commonwealth's characterization and interpretation of this evidence (again, essentially the Commonwealth's argument) to which Echols objects, rather than the veracity of the evidence itself. Habeas counsel contends that "[t]he very same evidence that was presented at Petitioner's trial had been determined to be inadequate to proceed to trial against Perkins." ECF No. 19 at 39. This statement illustrates that Echols's grievance is with the manner in which and purpose

for which the evidence was used rather than with the evidence – and whether such evidence was "false" – itself. Simply because the Commonwealth came to believe that it would be unable to prove Perkins's guilt as the shooter beyond a reasonable doubt, it does not follow that the Commonwealth was precluded from arguing at Echols's trial that the jury could choose to credit as accurate Nicole Thompson's testimony regarding her identification of George Paramour's killer. *Cf. Dowling v. United States*, 493 U.S. 342, 349 (1990).

Because this claim does not in reality allege any presentation of "false evidence," there is no cognizable underlying due process violation. *See Napue v. People of the State of Illinois*, 360 U.S. 264, 269 (1959). As such, the ineffective assistance of trial counsel claim is without merit and not "substantial," and Echols is unable to make use of the narrow exception to procedural default set forth in *Martinez*. His claim remains procedurally defaulted and he is not entitled to habeas relief. Echols's objections to the R&R are overruled, and the findings and conclusions of the R&R are modified as set forth herein.

### D. There is no basis for a certificate of appealability

A certificate of appealability ("COA") should only be issued "if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (quoting 28 U.S.C. § 2253(c)). "Where a district court has rejected the constitutional claims on the merits . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the denial of a habeas petition is based on procedural grounds and the Court does not reach the underlying constitutional claim, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In the Court's view, Echols has failed to demonstrate his entitlement to a COA under the applicable standard, and no COA will be issued as a consequence.

## V.     CONCLUSION

For the reasons set forth above, the Court overrules the objections to Magistrate Judge Heffley's R&R, adopts the R&R's findings and recommendations as to the first two habeas claims Echols's counsel raises (habeas claims one and three), and modifies the R&R as set forth herein with respect to habeas claim four. Echols's petition for habeas relief is denied and dismissed. The Court further declines to issue a COA or hold an evidentiary hearing.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge